(160 App. Div. 255)

**PEOPLE ex rel. BERON v. WALDO, Police Com'r.**

(Supreme Court, Appellate Division, First Department. January 23, 1914.)

1. MUNICIPAL CORPORATIONS (§ 185*)—POLICE DEPARTMENT—PROCEEDINGS TO REMOVE—SUFFICIENCY OF EVIDENCE.

    Evidence, in proceedings to remove a policeman for preparing, without authority, an official application purporting to have been made by another policeman for a transfer, *held* to show that relator did not act without authority and was not guilty of any intentional wrong.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—POLICE DEPARTMENT—INFERENCE BY COURTS.

    The courts hesitate to interfere with the internal discipline of the police department and will sustain a decision of the police commissioner removing a policeman for a substantial offense, where the evidence is conflicting, in absence of a flagrant violation of his statutory or constitutional rights.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. § 185.*]

Proceedings by the People, on the relation of Edward Beron, against Rhinelander Waldo, as Police Commissioner of the City of New York, to review proceedings dismissing relator from the police department. Writ sustained, proceedings annulled, and relator reinstated.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William Brunner, of New York City, for relator.

Archibald R. Watson, Corp. Counsel, of New York City (Harry Crone, of New York City, of counsel, and Terence Farley, of New York City, on the brief), for respondent.

CLARKE, J. Relator was duly appointed a patrolman in the police department of the city of New York, January 30, 1903. On April 3;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1913, he was put on trial on the charge of conduct unbecoming an officer; the specification being:

"That, said Patrolman Edward Beron, on or about March 19, 1913, did prepare an official communication addressed to the police commissioner, through official channels, purporting to be an application made by Patrolman Henry Hauser, shield No. 5925, Sixty-First precinct, for mutual transfer with Patrolman John Daly, shield No. 767, Twenty-Ninth precinct, and did sign the name of Patrolman Henry Hauser to said application without authority to do so."

Upon the trial the relator admitted the facts stated in said specification, with the exception of the last line thereof, "without authority to do so." He was found guilty and dismissed on April 8, 1913.

From the record it appears that Officer Hauser was attached to the Sixty-First precinct, in the Bronx. He was a friend of many years' standing of relator. Hauser was very anxious to get transferred to the Twenty-Ninth precinct. He talked on numerous occasions to a number of his friends on the force about it. He asked relator if he could not help him by finding some officer in the Twenty-Ninth who was willing to make the transfer. There was a custom in the department whereby, upon mutual request of the two patrolmen concerned, such a transfer could be made. Relator at Hauser's request posted a notice on the bulletin board in his station house that Hauser desired the transfer. An officer by the name of Daly offered to make the transfer. Relator sent him up to see Hauser and they had a talk. Daly came back and reported to relator that they had agreed to make the transfer and that Hauser had sent word by him to relator to make out the papers. Thereafter Daly made out the request for transfer on the blank furnished, in his own handwriting, and relator, in entire good faith and believing himself authorized by Hauser, and to save him the trouble of coming downtown, signed Hauser's name to it and sent the request in. It seems that he wrote the name "Henry" instead of "Harry" as Hauser had been accustomed to sign it, and also put in the wrong shield number, and these matters attracted attention at headquarters. Hauser was sent for and asked to sign his name half a dozen times. It is apparent that Hauser, seeing there was going to be some trouble, undertook to save himself at relator's expense by denying authority to sign. There is no question, on reading all of this record, that that is the fact. Hauser admitted that he had all these preliminary talks, that he was and had been for a long time anxious to be transferred, that relator had sent Daly up to him with whom he had a talk, that he had not told Daly that he would not transfer with him, but he says he subsequently made up his mind that Daly had the same kind of a post in the Twenty-Ninth that he had in the Sixty-First— that is, a "fly post"—and, as he was looking for a "fixed post," would not make the transfer. He further said that he had never authorized relator to sign his name.

Upon the trial relator with the utmost frankness, as he had done before the chief inspector, upon being first called down to headquarters, admitted the fact of his having signed Hauser's name, but denied that he had signed without authority.

The deputy commissioner who tried the case was obsessed with the notion that authority to sign could not be conferred except by a writing, and could not be exercised except by putting after the signature, "per" the actual signer.

Relator had five witnesses, including Daly, whose affidavits are attached to an application to the mayor asking a new trial, and appear in the record, who corroborated him, and his statement that Hauser had authorized him to sign the application. These witnesses were at the trial, but were not called; the trial commissioner saying, "No, only a waste of time." Upon this charge this officer, after ten years of service, has been dismissed from the department for doing a friendly act which could in no way advantage himself.

[1] His record shows that in ten years of service he had been fined eleven days' pay upon four trivial matters. The attitude of the civilian officers in this case is incomprehensible in view of the complete frankness of relator, the simple story convincing upon its face, the absolute absence of any intentional wrongdoing, or possible injury to any one. The impossibility of any such transfer being made except upon the mutual consent of both officers concerned demonstrates that relator's story must be true. For, at most, a mere irregularity, relator has suffered the extreme penalty. If he had been found guilty of grafting, drunkenness on duty, unprovoked assault on a citizen, or willful insubordination and disobedience of orders, he could not have been more severely punished.

[2] This court, as it has often said, hesitates to interfere with the internal discipline of the department. If there is a substantial charge and conflicting evidence, the court sustains the commissioner, unless there has been a flagrant violation of statutory and constitutional rights. But it is as important to the discipline and morale of the force to protect an officer against dismissal on frivolous charges, to see that he has fair play and just treatment, as it is to sustain the department when he is shown to be really guilty of insubordination, dereliction of duty, infraction of rules, or other conduct in violation of good order and discipline.

The writ should be sustained, the proceedings annulled, and the relator reinstated, with $50 costs and disbursements. All concur.

---

(83 Misc. Rep. 560)

### WILLIAMS et al. v. WILLIAMS.

(Supreme Court, Special Term, Schenectady County. December, 1913.)

1. PARTNERSHIP (§ 320*)—DISSOLUTION—VENUE.

In a suit to dissolve a copartnership, the venue is determined by the residence of parties and not by the locality of the partnership assets, even when such assets include real estate; and hence the initial proceedings for the dissolution of a partnership and the appointment of a receiver should be had in the place of the partners' domicile.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 741; Dec. Dig. § 320.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes